### R. TRUE V. THE STATE.

#### No. 3161. Decided November 15, 1905.

**1.—Burglary—Railroad Car—Indictment.**

Where the allegations in an indictment for burglary were such as to support either a night or daytime burglary, and the court submitted the case upon the theory that it was night-time burglary, there was no error, the evidence showing beyond controversy that the entry was at night.

**2.—Same—Newly Discovered Testimony—Diligence.**

See opinion for facts showing due diligence why newly discovered testimony could not be obtained for the trial, and the materiality of such testimony.

**3.—Same—Charge of Court—Sleeping in Car—Intent to Commit Theft.**

Where on a trial of burglariously entering a railroad car, the contention of the State was that defendant entered said car with intent to commit theft, and that of defendant that he entered the same for the purpose of going to sleep therein, and the court submitted a charge that if defendant entered said car for the purpose of sleeping therein, and not with the intent of committing theft they should acquit, there was error, and the requested charge that if appellant entered the car for the purpose of sleeping or for any purpose other than that of committing theft to acquit, should have been given.

Appeal from the District Court of El Paso. Tried below before Hon. I. R. C. Walshe, special judge.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*M. W. Stanton* and *A. G. Wilcox,* for appellant.—On the question of intent: Smith v. State, 24 Texas Crim. App., 290; White v. State, 18 Texas Crim. App., 57; Wimberly v. State, 22 Texas Crim. App., 506; Bond v. State, 23 Texas Crim. App., 180; Nally v. State, 30 Texas Crim. App., 456; Garza v. State, 38 Texas Crim. Rep., 317.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted for burglarizing a railroad car. The indictment alleges that the burglary was committed by force, threats and fraud. The court submitted the case upon the theory that it was a night-time burglary. The contention is made that this was error, and that under the allegations it could only be daytime burglary. The allegation is sufficient to support either a night- or daytime burglary. Carr v. State, 19 Texas Crim. App., 635. The evidence shows beyond controversy that the entry was at night. The State's evidence is to the effect that appellant entered at the north door of the car, by breaking the seal which closed the door. It is further shown that the car was consigned to Payne, and was a refrigerator car loaded with fruit from ·California; that the car had been set out on the side track on the 5th for the purpose of being unloaded; and the alleged burglary occurred on the night of the 7th. That during the three days,—5th, 6th, and 7th, Payne had been receiving fruit out of the car, transferring it to his establishment; and that T. M. Allen had charge of moving the fruit. The State further showed that the door on the south side of the car was sealed with a leaden seal, No. 1190. This number represented the number indicating El Paso Station, which was 1190 miles from New Orleans. Wherever a car had a seal with this number, it indicated that it had been broken at El Paso and resealed with this number. Near the door of the car alleged to have been broken a seal was found on the ground, with the No. 521b; and this indicated a station about that distance from San Francisco. The agent of the railroad company at El Paso testified, if this seal had been broken, it would not be used in resealing it at El Paso, but a new seal would be used, with the local number 1190 impressed upon it. These details assume importance in view of the motion for new trial on the ground of newly discovered testimony. Payne (the alleged owner of the fruit in the car) and Allen (his agent in moving it) file affidavits, supported by that of A. G. Wilcox and M. W. Stanton, attorneys for defendant. It is shown by Wilcox and Stanton that they used every effort possible to obtain the testimony in regard to the consignee, to whom the fruit belonged, and to other matters incident thereto; that they had applied to the local agent to ascertain to

whom the fruit was consigned, and to gather up all the facts preparatory to defending their client, but had failed utterly to obtain it. Without going into the details of this matter, we are of opinion that all reasonable efforts were used in trying to ascertain the facts with reference to these questions, and there was no want of diligence. Defendant could use no diligence, as he was incarcerated in jail and placed beyond the doing of anything personally except suggest to his counsel. Payne would have testified that the fruit was shipped to him from California, and that through his employee, Allen, he had been unloading this fruit from the car for three days, on the 5th, 6th and 7th of the month; and that the car had been set off on the side track as consigned to him for the purpose of being unloaded. Allen would have testified that as the employee of Payne he was moving the fruit, and that he took it from the north door of the car and not the south, and assigns reasons why he did not or may not have closed the door of the car when he quit work on the evening of the 7th. If the fruit was unloaded, as they all testify, from the north door, and not the south door, the testimony of Allen and Payne would become material, in view of all the other facts of the case. It is certain if the property was taken from this door, the seal had been broken. It had seal No. 521b on it originally, showing it to have been shipped from a station about 521 miles east of San Francisco. It is certain that appellant did not break that seal, because it was broken when they began unloading the car on the 5th, and evidently thrown upon the ground. This was the only seal discovered at the north door. This would render the fact almost certain that it had not been resealed at El Paso, because if that had occurred, the seal would have borne the number 1190, as testified by the parties who understood the situation—especially the agent of the company at El Paso. This becomes the more important because the night watchman testified that he heard appellant break the seal and enter the door; that he had looked at it just before, and the seal was intact and had not been broken. This was one of the most important questions in the case, and appellant (through his attorneys) had used all efforts possible to secure testimony explaining these matters and had failed. These matters were ascertained subsequent to the trial, and after considerable investigation. We are of opinion that the testimony was not only material, but of the most important and cogent character, and would have a very important bearing upon the case, and might show the door was left open by Allen that night.

The night watchman testified he heard defendant break the car and enter it; that he watched him enter, and in two or three minutes after he entered the car, he heard a noise as if some one was moving goods in the car; that after a few minutes, appellant came back to the door, came out of the door, and as he did so, the night watchman arrested him. There is nothing to indicate from the testimony of the night watchman that appellant had discovered the fact that he was in sight or had been watching him. An examination of the car showed there

were boxes or crates of oranges in the car and near the door; and that the noise heard by the watchman was the moving or falling of one of the boxes of oranges. This was found on the floor of the car, a short distance from and in front of the door. Appellant came out of the car, bringing nothing with him. He testified that he found the door open and entered for the purpose of going to sleep, and being hauled out of El Paso on an outgoing freight train; that when he entered the car, stumbling around, he struck this box, found out there was freight in the car, and from his familiarity with railroads knew he had no business in a loaded car, and immediately left the car, and upon getting out of the car on the ground, he was arrested by the watchman and carried to jail. The State's contention was that appellant entered the car for the purpose of committing theft. The evidence of the watchman, as stated above, forms the basis of this conviction. The court submitted it, along that line in behalf of the State; and then informed the jury, if appellant entered the car for the purpose of sleeping therein, and not with the intent of committing theft, they should acquit. Exception was reserved because it places a burden upon appellant not known to the law; that is, it required the jury to believe not only that he entered the car for the purpose of sleeping, but also that he did not enter it for the purpose of committing theft. Either of these contingencies would have exonerated him from the charge of burglary. It did not require their conjunction. A special charge was requested in this respect, that if the jury believed appellant entered the car for the purpose of sleeping, or for any purpose other than that of committing theft, he would be entitled to an acquittal. We believe this charge should have been given. If his testimony is to be credited, and he had a right to have the jury pass upon it, he entered it without any purpose or intent at all to steal. We believe that the questions discussed, as presented by this record, are sufficient to demand a reversal. The judgment is accordingly reversed and the cause remanded.

*Reversed and remanded.*